___ FILED              ___ RECEIVED
___ ENTERED            ___ SERVED ON
              COUNSEL/PARTIES OF RECORD

MAY 1 1 2012

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| GARY ROBBINS, | ) |
| Plaintiff, | ) |
| vs. | )    3:11-cv-00743-RCJ-WGC |
| SERVER TECHNOLOGY, INC. et al., | )    **ORDER** |
| Defendants. | ) |

Defendant Server Technology, Inc. ("STI") hired Plaintiff Gary Robbins as Chief Operating Officer ("COO") in July 2001 and later appointed him as Chief Financial Officer ("CFO"), Senior Vice President of Operations, and President of Defendant PDUs Direct, LLC ("PDU"). (*See* Am. Compl. ¶ 16, Oct. 20, 2011, ECF No. 7).[1] Plaintiff worked for STI for over nine years. (*Id.*). At an April 2006 meeting in Montreaux,[2] STI's CEO Carol Ewing, its President Brandon Ewing, and one of its directors Don Montgomery presented a Stock Incentive Plan (the "SIP"), under which Plaintiff and three other executives, all of whom were also present, would receive 0.5% of STI's stock "upon a liquidity event," i.e., if the company were sold. (*See id.* ¶¶ 17–18). At a July 9, 2008 lunch meeting in Montreaux between Plaintiff, Carol Ewing, and Brandon Ewing, the Ewings asked Plaintiff if he would serve as President of STI in the future if neither of them could continue to serve and if he would immediately serve as

---

[1] Plaintiff does not specifically allege the corporate relationship between Defendants, but presumably PDU was a subsidiary of STI.

[2] Presumably Montreaux, California, although not explicitly so alleged.

1   President of STI's new company, PDU. (*Id.* ¶ 20).  Plaintiff agreed to serve as President of PDU

2   based upon the Ewings' promise that "his compensation would be significantly increased" (the

3   "Compensation Increase Agreement" or "CIA"). (*Id.*).  Defendants eventually hired three

4   persons to replace Plaintiff in three capacities: George Holman as President of PDU, Edward

5   Vees as COO, and Ann McKenzie as Senior Controller. (*Id.* ¶ 24).[3]  Before Defendants hired

6   Holman, Vees, and McKenzie, Plaintiff was Defendants' oldest and longest-tenured corporate

7   officer. (*Id.* ¶ 25).  Carol Ewing terminated Plaintiff on January 5, 2011. (*Id.* ¶ 27).

8          Plaintiff sued Defendants in state Court on ten causes of action: (1) breach of contract;

9   (2) breach of the implied covenant of good faith and fair dealing; (3) equitable estoppel; (4)

10  intentional misrepresentation; (5) negligent misrepresentation; (6) promissory estoppel; (7)

11  quantum meruit; (8) slander per se; (9) unjust enrichment; and (10) violation of the Age

12  Discrimination in Employment Act ("ADEA"). (*See* Compl., Sept. 8, 2011, ECF No. 1-1, at 2).

13  Plaintiff voluntarily dismissed the sole federal claim under ADEA while the case was still

14  pending in state court. (*See* Notice of Dismissal, Oct. 10, 2011, ECF No. 1-1, at 14).  Defendants

15  removed based on ERISA-preemption of the remaining state law claims, (*see* Notice of Removal

16  ¶¶ 5–8, Oct. 14, 2011, ECF No. 1), and before Defendants answered the Complaint in federal

17  court, Plaintiff filed the Amended Complaint ("AC"), (*see* Am. Compl., Oct. 20. 2011, ECF No.

18  7).  The AC removes "Doe" defendants from the caption, omits the "in excess of $10,000"

19  language from the prayer for relief (which is required to invoke the general jurisdiction of the

20  state district court in Nevada), adds an explicit demand for a jury trial (which is required in

21  federal court), and revives the ADEA claim previously dismissed voluntarily in state court, but

22  appears otherwise identical to the original Complaint. (*See id.*).

23          Defendants moved to dismiss the AC in its entirety for failure to state a claim.  The Court

24  _____

25       [3]Plaintiff does not specify whether Vees and McKenzie assumed Plaintiff's prior duties to
STI, to PDU, or to both entities.

1   indicated at oral argument that it believed there was no ERISA plan implicated in this case and

2   that it intended to remand for this reason (the ADEA claim having been added only after

3   removal).  The Court invited briefing on the issue.  Rather than brief the issue for determination,

4   the parties have submitted a stipulation for approval whereby: (1) Plaintiff will dismiss all claims

5   relating to the "Incentive Compensation Plan" attached to the motion to dismiss (ECF No. 9)

6   without prejudice; (2) Plaintiff will dismiss the defamation claim without prejudice; (3) Plaintiff

7   will dismiss the ADEA claim with prejudice; and (4) the case will be remanded to state court,

8   where Defendants shall retain the right to file another notice of removal based upon ERISA

9   preemption if Plaintiff again raises the claims based upon the Incentive Compensation Plan,

10  though Plaintiffs do not agree that ERISA preemption in fact applies to such claims.

11          The Incentive Compensation Plan is the alleged agreement referred to by the Court as the

12  SIP, i.e., the plan whereby certain executives such as Plaintiff were to receive company stock

13  upon the sale of the company.  The other agreement alleged to have been breached is the CIA,

14  which was apparently a nonspecific, verbal promise to increase Plaintiff's salary if he agreed to

15  serve as President of PDU.  Apparently, Defendants do not allege that the CIA is also an ERISA

16  plan supporting federal jurisdiction, and by virtue of the present stipulation they will likely be

17  estopped from so arguing in the future.  Litigants cannot create or destroy subject matter

18  jurisdiction by stipulation.  The Court's approval of the present stipulation therefore rests on its

19  independently considered acceptance of Plaintiff's and Defendants' common position that there

20  is no basis for federal jurisdiction over the CIA-based claims.

21          In summary, the Court understands the parties to be stipulating to: (1) dismissal without

22  prejudice of the slander per se claim and any and all claims arising out of the SIP; and (2)

23  dismissal with prejudice of the ADEA claim.  The Court approves the stipulation.  The natural

24  result of this stipulation is the remand of remaining claims insofar as they concern the CIA.  The

25  parties cannot directly stipulate to waive federal jurisdiction as such, but this is the result of the

1   parties' stipulation of the dismissal of the above-mentioned claims.  With all claims potentially

2   supporting federal jurisdiction having been dismissed, the Court remands pursuant to 28 U.S.C.

3   § 1447(c).

4                                              **CONCLUSION**

5           IT IS HEREBY ORDERED that the Age Discrimination in Employment Act claim is

6   DISMISSED with prejudice.

7           IT IS FURTHER ORDERED that the slander per se claim is DISMISSED without

8   prejudice.

9           IT IS FURTHER ORDERED that the remaining claims are DISMISSED without

10  prejudice, insofar as they pertain to the alleged Stock Incentive Plan.

11          IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 9) is DENIED as

12  moot.

13          IT IS FURTHER ORDERED that the hearing scheduled for April 23, 2012 is

14  VACATED.

15          IT IS FURTHER ORDERED that the case is REMANDED.

16          IT IS SO ORDERED.

17  DATED:  This 11th day of May, 2012.

18

19                                          _____

20                                               ROBERT C. JONES
                                             United States District Judge

21

22

23

24

25